# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BLUEFIELD DIVISION

| | |
|---|---|
| THOMAS SAYRES, ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Civil Action No. 1:09-0968 |
| ) | |
| GEORGE JANICE, Warden ) | |
| of McDowell County and ) | |
| Stevens Correctional Centers, *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

On August 25, 2009, Plaintiff, acting *pro se* and in confinement at McDowell County Correctional Center in Welch, West Virginia,[1] filed his letter-form Complaint pursuant to 42 U.S.C. §1983.[2] (Document No. 1.) Plaintiff fails to name a Defendant. Plaintiff alleges that prison officials are retaliating against him for filing "paper work" and threatening to expose him to inmates that he has "had trouble with." Specifically, Plaintiff states as follows:

> I'm writing to let you all know why I have not went on with the lawsuit is because they threatened me if I did not stop filing the paper work on them that they were going to make me go over to S.C.C. I cannot go to [S.C.C.] because I had trouble with other inmates over there because the staff at M.C.C.C. told [inmates] that I told on them for smoking, betting on ball games and racing, playing poker, and tattoos. The day I filed the grievances, they took me to S.C.C. I would not go out on mainline so they put me in lock up that night and tried to say that I did not have any keep-aways on anyone over there. I told them they need to look again. Well they called a counselor and he was the one who told me that I had to go to lock up until the next day, until they could get the paper work for me to go to P.C. Well, the next day the Deputy Warden came up to the Unit Manager's office and called me out to the office

---

[1] The West Virginia Division of Corrections' website indicates that Plaintiff is currently incarcerated at St. Marys Correctional Center.

[2] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

and asked me who I was having trouble with. I gave him the names and he told me well you are right, so I will not make you go out on mainline because they all are in your file that you can't be around them at all so I will get you moved back over to M.C.C.C. as long as you are not afraid of getting hurt over the things I filed the paper work on. If not, you will have to be housed here at S.C.C.. So I told him I was not afraid of it and he told me it would be a day or so but they made me stay in lock up for a week and would not let me call my family. Then on 5-21-09 when they took me from lock up to the transfer office, C.O. Jackson told me if I did not quit filing paper work on them, and did not lay down and do my time, that they would move me back over to S.C.C., put me on mainline, the keep-aways would come up missing out of my file, and I could not do anything about it. The C.O. that took me from S.C.C. to M.C.C.C. had me to tell Miss White what I was told to do or I would be moved back to S.C.C. So all of them know what was told to me and that is why I have not done any move on it and I would like to know if you could let me have a lawyer to do a lawsuit against them for doing me the way they done me.

By the way, they told me that I would not get moved from down there at all. But on 5-27-09 when the Case Manager came and got my lawyer's phone number to call him to set up a date for me to talk to him. They put me on the list to come here, so I do not know if my lawyer said something about the letter I sent to him to mail to you all while I was in lock up or what happen that day. But when I got here on 5-28-09, they told me I was just put on the list the day before so that was why they did not have all my stuff together for me. I ask that you all can help me out with this trouble. For it will keep on happening to other inmates there. I know who it is doing this to the inmates. Because I told this person about one thing that was told to an inmate that I was suppose to tell someone and when I done that, this person told me "no it was not said because the only thing we asked him was about what happened on 1-8 not on 1-6." So that right there told me who it was telling other inmates that stuff plus other inmates said that she told them who it was that told on them. So I would like to see them lose their job for causing us trouble with other inmates. I do not know if my lawyer sent my other letter to you all or not, but I need a lawyer to help me on this if you all will help me. I can't write good at all. You can see that by the way I done this letter. Please let me know either way if you can or can't help me to get a lawyer. I have more that I can't spell on them. I have names of other inmates they cause trouble for just like they have me. So please help me to put a stop to this stuff. The day they took me over there, I told all the staff that I could not go to that place and they told me they could not help me. I made the mess, so I have to take care of it myself. I will give names to a lawyer because I cannot spell names. They sure went against my rights. Please understand I was afraid for my safety is why I did not go through with it all. So please help me out on this.

(Document No. 1, pp. 1 - 5.) Plaintiff requests that prison staff "lose their jobs for causing him trouble with other inmates." (Id., p. 4.)

Plaintiff attaches the following documents as Exhibits: (1) Copy of an "Inmate Grievance" dated May 14, 2009, complaining that food is served cold and in inadequate portions (Id., p. 6.); (2) Copy of an "Inmate Grievance" dated May 14, 2009, complaining that "there is no fire sprinklers" (Id., p. 7.); (3) Copy of an "Inmate Grievance" dated May 14, 2009, complaining that "there are no fire exists from cells" (Id., p. 8.); and (4) Copy of an "Inmate Grievance" dated May 14, 2009, complaining that "there are no sewage drains in the showers on the first floor" (Id., p. 9.).[3]

## THE STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327-28, 109 S.Ct. at 1833. A complaint, therefore, fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him or her to relief.

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). 42 U.S.C. § 1983

---

[3] It does not appear that Plaintiff has filed any Grievances respecting the harassment and retaliation claims which he makes in this case, and therefore he has failed to exhaust his administrative remedies respecting those claims.

3

provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

**1.     Eighth Amendment Claim:**

The undersigned views Plaintiff's Complaint as setting forth a claim under the Eighth Amendment. As a general matter, punishments prohibited under the Eighth Amendment include those which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112

S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.")

Plaintiff contends that prison staff violated his constitutional rights by transferring him to Stevens Correctional Center because he could not safely stay on mainline due to "keep-aways" from other inmates. Assuming Plaintiff's allegation as true, Plaintiff has failed to state a constitutional claim of failure to protect. In order to establish a claim of failure to protect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison officials acted with "'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834, 114 S.Ct. at 1977. First, Plaintiff fails to allege that he was incarcerated under conditions imposing a substantial risk of serious harm. Plaintiff does not claim that he was assaulted, that his life was

threatened by other inmates, or that his safety was jeopardized during his stay at Stevens Correctional Center. Plaintiff acknowledges that he was placed in "lock up" for safety purposes during his short stay at Stevens Correctional Center. Second, Plaintiff fails to allege facts sufficient to satisfy the subjective component of deliberate indifference. To satisfy the subjective component, Plaintiff must allege that the defendant was consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff, however, fails to allege that the defendant knew of and disregarded an excessive risk to his health or safety. It appears that once Plaintiff notified staff that he should not be at Stevens Correctional Center due to the "keep-aways," Plaintiff was transferred back to McDowell County Correctional Center. Furthermore, Plaintiff does not indicate that he suffered any serious injury as a result of his brief transfer to Stevens Correctional Center. Plaintiff's claim that prison officials should be liable due to the possibility that his transfer to Stevens Correctional Center could have endangered his life is insufficient. See Henslee v. Lewis, 153 Fed. Appx. 178 (4th Cir. 2005)(Inmate did not state a cognizable claim under Section 1983 when he alleged that jail employee incited other inmates to attack him, but did not contend that any such attack occurred.); Langston v. Fleming, 38 F.3d 1213 (4th Cir. 1994)(*unpublished opinion*)(Prisoner failed to state a claim where he merely alleged that guards endangered his life by informing other inmates that he was charged with rape). Finally, the verbal harassment or abuse of an inmate by prison guards, without more, is insufficient to state a constitutional deprivation.[4] Ivey v. Wilson, 832 F.2d 950, 954-55 (6th Cir. 1987); also see Lindsey v. O'Connor, 2009 WL 1316087, at * 1 (3rd Cir. (Pa.))(holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment"); Purcell v. Coughlin, 790 F.2d 263, 265 (2nd Cir. 1986)(stating that name-calling does not rise to the level of a constitutional violation); Collins v. Cundy, 603 F.2d 825, 827

---

[4] Plaintiff is currently incarcerated at St. Marys Correctional Center. The undersigned notes that Plaintiff alleges that correctional officers at McDowell County Correctional Center verbally abused him.

6

(10th Cir. 1979)(finding that a sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation). Based on the foregoing, the undersigned finds that Plaintiff has failed to state a cognizable claim under the Eighth Amendment for which relief can be granted.

**2.     Retaliation Claim:**

Prison officials may not retaliate against inmates for their exercise of a constitutional right. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1995); American Civil Liberties Union of Md, Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993)(citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). The Fourth Circuit has held that an inmate's claim of retaliation must be treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996)(*en banc*)(citations omitted). To prevail upon a claim of retaliation, the inmate must specifically demonstrate that but for his protected conduct, he would not have been subject to the alleged retaliatory act. See Huang v. Board of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990). Essentially, the inmate must first demonstrate that he engaged in protected conduct and second that his protected conduct motivated the retaliatory act.

Plaintiff claims that prison officials retaliated against him for filing grievances. Specifically, Plaintiff alleges that he was transferred to Stevens Correctional Center on the same day that he filed his grievances. The Fourth Circuit, however, has recognized that inmates have "no constitutional right to participate in grievance proceedings." Adams, 40 F.3d at 75. Since Plaintiff has no constitutional right to participate in grievance procedures, he has failed to establish a claim of retaliation.[5] See White v. Francis, 2008 WL 2705102 (N.D.W.Va. Jul. 9, 2008)(finding that

---

[5] The undersigned further notes that it is well established that an inmate has no constitutional right to insist that he be housed in a specific institution. *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *also see Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995)(finding that prison officials may transfer an inmate who has filed numerous grievances without violating a

7

"[b]ecause there is no constitutional right to file a grievance, retaliation against [plaintiff] for filing one does not meet the requirements of a retaliation claim"), aff'd, 325 Fed. Appx. 214 (4th Cir. 2009), cert. denied, 130 S.Ct. 1287, 2010 WL 250973 (2010); Alqam v. United States, 2008 WL 2945492, n. 8 (N.D.W.Va. Jul. 24, 2008)(finding that plaintiff failed to state a claim by alleging that he was transferred in retaliation for filing administrative grievances); Bane v. Virginia Dept. of Corrections, 2007 WL 1378523 (W.D. Va. May 8, 2007)(stating that because "there is no constitutional right to participate in grievance proceedings, [plaintiff] is barred from claiming that the transfer was made in retaliation to the exercise of a constitutionally protected right"). Accordingly, the undersigned finds that Plaintiff's claim of retaliation should be dismissed.

### PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** Plaintiff's Complaint (Document No. 1.), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

---

clearly established constitutional right), *cert. denied*, 516 U.S. 991, 116 S.Ct. 524, 133 L.Ed.2d 431 (1995).

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this Magistrate Judge.

    The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*.

    Date: July 30, 2010.

R. Clarke VanDervort
United States Magistrate Judge